IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BRIDGET A. DESROSIERS,<br><i>et al.</i>,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>CIVIL NO.: WDQ-07-2253</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MAG INDUSTRIAL AUTOMATION<br>SYSTEMS, LLC, <i>et al.</i>,</td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Bridget A. Desrosiers[1] sued Giddings & Lewis Machine Tools, LLC ("G&L"), MAG Industrial Automation Systems, LLC ("MAG Industrial"), and Maxcor, Inc. ("Maxcor") for various products liability claims arising from the death of David Desrosiers. For the following reasons, G&L's motion for summary judgment will be granted in part and denied in part, and the motions for summary judgment of MAG Industrial and Maxcor will be granted.

I.   Background[2]

David Desrosiers was the assistant foreman at Gischel Machine Company ("Gischel") in Baltimore, Maryland.  Greenawalt Dep. 11:9-10, Mar. 12, 2008.[3]  On September 7, 2004, he was

---

[1] Desrosiers sued individually, as the personal representative of David Desrosiers, and as the mother and next friend of Katherine Desrosiers.

killed while operating a horizontal boring machine (the "HBM").
*Id.* at 11:19-12:2.[4]  No one saw the accident.  Kvalseth Dep.
197:3-5, Nov. 10, 2008.

G&L,[5] a Wisconsin company, manufactured and sold the HBM in
1953.  Orlowski Aff. ¶ 7; Def.'s Answer to Interrog. ¶ 3.[6]  The
HBM, which has no guard or warning, has a rotating spindle.
Kvalseth Dep. 289:6-11; Orlowski Dep. 23:22-24:2, Nov. 25, 2008.
It appears that Mr. Desrosiers was killed when he became
entangled on a "drift pin" that he had inserted to hold a tool
in place and was reeled into the spindle.  *Id.* at 24:5-14.
Because a drift pin sticks out from the spindle, a "draw key"
may be used instead, which "prevents the creation of an

---

[2] In reviewing the defendants' motion for summary judgment,
Desrosiers's evidence "is to be believed, and all justifiable
inferences are to be drawn in [her] favor."  *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[3] He had worked for Gischel for at least five years and the
general manager found him "very knowledgeable."  Greenawalt Dep.
10:21-11:14.

[4] An HBM is an industrial machine designed to cut and mill metal.
Adams Aff. ¶ 7.

[5] G&L is a subsidiary of MAG Industrial, which is held by Maxcor
(now known as "MAG Industrial Automation Systems Holdings,
Inc.").  Sitterly Aff. ¶¶ 4-6.

[6] The HBM was first sold to Allis-Chalmers Manufacturing Company
before Gischel bought it at auction in the early 1980s.  Beyer
Dep. 21:1-6, Oct. 8, 2008; Gischel Dep. 9:3-5, 11:10-13, Mar.
12, 2008.

entanglement hazard" since it does not protrude. Adams Aff. ¶ 15; Greenawalt Dep. 59:1-5.[7]

Before the accident, Gischel bought a replacement draw key from G&L for Mr. Desrosiers at his request. Greenawalt Dep. 60:11-61:1. After the accident, the new draw key was found on top of the HBM. *Id.* at 61:15-19. The parties speculate about why Mr. Desrosiers used the drift pin instead of the draw key. Desrosiers argues that operators are "pressure[d]" to "make parts quick[ly]," and it was faster for Mr. Desrosiers to use a drift pin. Paper No. 155 at 19; Bergman Dep. 157:7-9, 159:11-13, Mar. 20, 2009; Helwig Dep. 88:15-14, Apr. 3, 2008. The defendants assert that "no one knows what was in the mind of the decedent when the accident happened and [there is] no evidence to indicate why he used the drift pin." Paper No. 161 at 17 n.12.

On August 24, 2007, Desrosiers sued G&L, MAG Industrial, and Maxcor, alleging wrongful death and survival claims based on negligence, strict liability, and breach of warranty. On April 2, 2010, the defendants moved for summary judgment. Paper No. 146. On May 5, 2010, Desrosiers responded. Paper No. 155. On

---

[7] A drift pin is a "long wedge shaped metal tool that tapers to a point on one end," while a draw key "fits so that it is flush with or slightly recessed from the surface of the spindle." Adams Aff. ¶¶ 15, 17.

May 28, 2010, the defendants filed their response.  Paper No.
161.

II.  Analysis

  A.  Standard of Review

    Under Rule 56(c), summary judgment "should be rendered if
the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  In considering the
motion, "the judge's function is not . . . to weigh the evidence
and determine the truth of the matter but to determine whether
there is a genuine issue for trial."  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact
is genuine "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  *Id.* at 248.

    The Court must "view the evidence in the light most
favorable to . . . the nonmovant, and draw all reasonable
inferences in h[er] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court
must abide by the "affirmative obligation of the trial judge to
prevent factually unsupported claims and defenses from
proceeding to trial," *Bouchat v. Balt. Ravens Football Club,
Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal
quotation marks omitted).

4

B. Choice of Law

In a diversity case, the choice of law rules are those of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In tort cases, Maryland generally follows the principle of *lex loci delicti*, which applies the law of the place "where the last event required to give rise to the tort occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 613, 911 A.2d 841, 844 (2006). Wrongful death actions are governed by statute. Md. Code Ann., Cts. & Jud. Proc. § 3-901 *et seq.*

1. Wrongful Death Claims

A decedent's relatives seeking "recovery for their loss by virtue of the victim's death" may bring a wrongful death claim. *Benjamin v. Union Carbide Corp.*, 162 Md. App. 173, 202, 873 A.2d 463, 480 (2005) (citation and internal quotation marks omitted). Under Maryland's wrongful death statute, "[i]f the wrongful act occurred in another state, [the Court] shall apply the substantive law of that jurisdiction." Md. Code Ann., Cts. & Jud. Proc. § 3-903(a).

A "wrongful act" is an "act, neglect, or default . . . which would have entitled the party injured to maintain an action and recover damages if death had not ensued." *Id.* § 3-901(e). Accordingly, the location of the defendants' purportedly wrongful acts will determine which jurisdiction's

law applies.  *Kielar v. Granite Const. Co.*, 647 F. Supp. 2d 524, 528 (D. Md. 2009) (Louisiana law applied to wrongful death products liability claim because plaintiffs had not shown that the system at issue was designed or manufactured outside Louisiana).

Desrosiers alleges that the defendants defectively designed the HBM and placed it in the stream of commerce.  Compl. ¶¶ 19–20.  G&L manufactured the HBM in Wisconsin.  Def.'s Answer to Interrog. ¶ 3.  Accordingly, Wisconsin's law governs Desrosiers's wrongful death claim.

2. Survival Claims[8]

A personal representative may seek recovery for the victim's injuries "just as if the victim were still alive." *Benjamin*, 162 Md. App. at 202, 873 A.2d at 480 (citation and

---

[8] The defendants argue that Desrosiers's survival claims are barred by Maryland's statute of repose, which provides a 20-year limitation for claims arising from any defective and unsafe "improvement" to real property.  Md. Code Ann., Cts. & Jud. Proc. § 5-108(a); *Rose v. Fox Pool Corp.*, 335 Md. 351, 370, 643 A.2d 906, 916 (1994).  An "improvement" is, *inter alia*, "a valuable addition made to property (usually real estate) or an amelioration in its condition."  *Id.* at 376, 643 A.2d at 919.

The defendants argue that the HBM was an improvement because it was used in the shop for more than 20 years and was attached to the shop.  Paper No. 146 at 34–35.  The evidence is inconclusive.  *See, e.g.*, Gischel Dep. 10:16-20 (deponent responded "I can't say exactly we did, but I would think we did" when asked whether the HBM was "anchored" to the floor). Because the Court must view the evidence in the light "most favorable" to Desrosiers, *Dennis*, 290 F.3d at 645, summary judgment may not be granted on the statute of repose defense.

internal quotation marks omitted).  A personal representative

may sue on behalf of the decedent "in any appropriate

jurisdiction."  Md. Code Ann., Est. & Trusts § 7-401(y); *see*

*also* Md. Code Ann., Cts. & Jud. Proc. § 6-401.  The Court will

apply *lex loci delicti* to Desrosiers's survival claims.  *See*

*Jones v. Prince George's Cnty*, 541 F. Supp. 2d 761, 763 (D. Md.

2008) (because the law is silent for claims brought under

Maryland's Survival Statute, Maryland adheres to the *lex loci*

*delicti* rule).

*Lex loci delicti* applies "the law of the State where the

injury--the last event required to constitute the tort--

occurred."  *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529

F. Supp. 2d 604, 606 (D. Md. 2008) (citation and internal

quotation marks omitted).  Here, the decedent was at his work

site in Maryland at the time of his injury--his death.  *See id.*

at 607.[9]  Accordingly, Maryland law applies to Desrosiers's

survival claims.[10]

---

[9] *Ben-Joseph* applied New Jersey law to a car accident suit
because the collision occurred in New Jersey, even though the
alleged negligence in contracting, repairing, and maintaining
the truck occurred in Maryland.  *Id.* at 607.

[10] Desrosiers argues that Wisconsin law applies to her survival
claims, but the cases she relies on are distinguishable.  In
*Sacra v. Sacra*, a Delaware collision pushed one of the vehicles
into Maryland and caused the decedent's death when he hit a
pole.  48 Md. App. 163, 164, 426 A.2d 7, 8 (1981).  Delaware law
applied to the wrongful death and survival claims because "there
was no substantial lapse of time or distance" between the impact

C. MAG Industrial and Maxcor's Motions for Summary Judgment

Desrosiers has sued MAG Industrial, G&L's holding company, and Maxcor, which owns MAG Industrial.  Sitterly Aff. ¶¶ 5-6.

In Maryland and Wisconsin, a corporation that acquires the assets of another corporation is not liable for the liabilities and debts of its predecessor unless: "(1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts." *Balt. Luggage Co. v. Holtzman*, 80 Md. App. 290, 562 A.2d 1286, 1289-90 (1989); *see also Fish v. Amsted Indus., Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820, 823 (Wis. 1985) (para-phrasing these factors).

The defendants argue that neither MAG Industrial nor Maxcor meets the liability exceptions.  *See, e.g.*, Sitterly Aff. ¶¶ 10-11 (no knowledge that either of the two companies expressly or impliedly assumed liability).  Desrosiers has no evidence of a

and the death.  *Id.* at 166-67, 426 A.2d at 9.  Here, the HBM was manufactured in Wisconsin in 1953 and Mr. Desrosiers died in Maryland in 2004.
    In *Farwell v. Un*, two doctors treated a depressed patient in Maryland and Delaware before he committed suicide in Pennsylvania.  902 F.2d 282, 283-84 (4th Cir. 1990).  Because the statutes of Maryland and Delaware defined the doctors' standard of care, the laws of those states applied to the wrongful death and survival claims.  *Id.* at 287.  Desrosiers is suing under general tort principles and breach of contract.

*Baltimore Luggage* exception beyond the contention that "[Maxcor]
did not expressly *exclude* liability for itself or [MAG
Industrial]." Paper No. 155 at 46 (emphasis added). The
exception "requires an express or implied *assumption* of
liabilities, not an express exclusion of liabilities." *Columbia
Propane, L.P. v. Wis. Gas Co.*, 261 Wis. 2d 70, 88, 661 N.W.2d
776, 785 (Wis. 2003). Accordingly, the motions for summary
judgment of Maxcor and MAG Industrial must be granted.

D. Strict Products Liability[11]

Desrosiers's strict products liability claims allege that
the HBM was defectively designed and lacked a warning. Compl. ¶
19.

1. Wrongful Death Claims Under Wisconsin Law

Wisconsin law governs Desrosiers's strict products
liability wrongful death claims.

a. Strict Design Defect

Strict design defect claims focus "on the nature of the
defendant's product" instead of the defendant's conduct. *Green
v. Smith & Nephew AHP, Inc.*, 245 Wis. 2d 772, 813, 629 N.W.2d
727, 746 (Wis. 2001). Liability is imposed "without regard to
negligence[,] duty of care[, or] foreseeability." *Id.* at 813,
629 N.W.2d at 746.

---

[11] Because the motions of summary judgment for MAG Industrial and
Maxcor will be granted, Sections D-G apply only to G&L.

Desrosiers must show that the HBM was defective and unreasonably dangerous when G&L placed it in the stream of commerce. *Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (Wis. 1967).[12]  Whether a product has an unreasonably dangerous defect depends on an ordinary consumer's expectations.[13]  If an objective user would "reasonably anticipate the dangerous condition of the product" and appreciate the risk of injury, the product does not have an unreasonably dangerous defect.  *Id.* at 333, 230 N.W.2d at 799.

Desrosiers argues that the HBM was unreasonably dangerous when placed in the stream of commerce because G&L had been "aware of the potential hazard of the entanglement on rotating spindles" from "the inception of the [HBM] line."  Sitterly Dep. 51:1-4, Sept. 24, 2009; Paper No. 155 at 25.  Still, the HBM lacked a guard or barrier to prevent clothing or body parts from

---

[12] Desrosiers must show:
> (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product . . . , and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it.

*Dippel*, 37 Wis. 2d at 460, 155 N.W.2d at 63.

[13] *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 332-33, 230 N.W.2d 794, 798-99 (Wis. 1975) (pool did not have an unreasonably dangerous defect because the lack of a self-latching gate was an "obvious" condition).

coming into contact with the spindle. Orlowski Dep. 81:7-22.

The HBM also lacked an emergency stop button. *Id.* at 83:2-14.[14]

G&L counters that the HBM was not unreasonably dangerous because it was designed so that an operator need not be close to the spindle, and it included a "safety device in the form of a draw key" to prevent entanglement. Adams Aff. ¶ 18; Paper No. 146 at 13. Desrosiers's expert concedes that any machinist would have known of the hazard. *See, e.g.*, Kvalseth Dep. 289:19-290:1 ("I think if you ask any operator . . . if you get too close to this rotating shaft and your clothing could get entangled, you may get hurt, they're going to say yes.").

The unreasonably dangerousness of a product "must be evaluated on a case-by-case basis." *Green*, 245 Wis. 2d at 829, 629 N.W.2d at 755. Whether the HBM was unreasonably dangerous "presents a material issue of fact, rendering summary judgment inappropriate," *Hansen v. New Holland N. Am., Inc.*, 215 Wis. 2d 655, 665, 574 N.W.2d 250, 254 (Wis. App. 1997).[15] Accordingly,

---

[14] The parties dispute whether a "trip wire cut off switch," which was installed on the HBM four years after the accident, would have prevented the accident. Paper No. 155 at 7-8; Paper No. 161 at 11 n.7.

[15] The farmer in *Hansen* improperly tried to cut hay from a hay baler because "'[i]t didn't look that dangerous at the time,'" and he was injured. *Id.* at 662, 574 N.W.2d at 252. The *Hansen* court refused to conclude the baler had an "open and obvious" danger because "[w]hether the baler was unreasonably dangerous [was] a jury question." *Id.* at 668, 574 N.W.2d at 254.

G&L's motion for summary judgment on the strict design defect wrongful death claim must be denied.

   b.  Strict Failure to Warn

A strict failure to warn claim turns on the manufacturer's duty to warn, which arises if it "has, or should have, knowledge of a dangerous use." *Krueger v. Tappan Co.*, 104 Wis. 2d 199, 207, 311 N.W.2d 219, 224 (Wis. App. 1981).  The "open and obvious" defense applies when a "reasonable person in the position of the plaintiff" would recognize the dangerous condition and its risk. *Griebler v. Doughboy Rec., Inc.*, 160 Wis. 2d 547, 551-52, 466 N.W.2d 897, 898-99 (Wis. 1991) (plaintiff confronted open and obvious danger when diving headfirst into water of unknown depth).

    It is undisputed that G&L did not provide a warning that an operator could entangle himself in the HBM.  *See* Paper No. 146 at 20; Paper No. 155 at 35.  G&L argues that it had no duty to warn because the risk of entanglement was "open and obvious." Paper No. 146 at 37.

Desrosiers concedes that Mr. Desrosiers used the drift pin, and his clothing became entangled in the spindle, resulting in his death.  Paper No. 155 at 2, 19, 32.  Mr. Desrosiers was an experienced machinist, and he had requested a new draw key before the accident.  Greenawalt Dep. 45:10-13 (Mr. Desrosiers became the assistant foreman because he was "the most

knowledgeable" machinist); *id.* at 60:11-61:1 (general manager "personally handed" the new draw key to Mr. Desrosiers). As there is no evidence countering G&L's evidence that the risk of entanglement was "open and obvious," its motion for summary judgment on the strict failure to warn wrongful death claim must be granted.

2. Survival Claims Under Maryland Law

Maryland law governs Desrosiers's survival claims based on strict products liability.

a. Strict Design Defect

Maryland and Wisconsin follow the same strict design defect liability analysis. *See, e.g.*, *Phipps v. Gen. Motors Corp.*, 278 Md. 337, 344, 363 A.2d 955, 959 (1976) (product must have unreasonably dangerous defect in terms of consumer expect- ations). "Any facts that establish proof greater than speculation [that the product is defective] are sufficient to raise a jury issue." *C & K Lord, Inc. v. Carter*, 74 Md. App. 68, 89, 536 A.2d 699, 709 (1988).[16] A reasonable jury could conclude that the HBM was defective and unreasonably dangerous because the HBM from its "inception" lacked a guard to prevent

---

[16] In *Carter*, an employee sued for strict products liability after he was injured when cleaning a conveyor without shutting it down. *Carter*, 74 Md. App. at 71-73, 536 A.2d at 700-01. *Carter* found "adequate evidence to support a jury issue on both the defective condition and unreasonably dangerous elements." *Id.* at 90, 536 A.2d at 709-10.

entanglement or an emergency stop button to enable the operator to shut off the machine if he was reeled into the spindle. *See* Sitterly Dep. 51:1-4, Sept. 24, 2009; Orlowski Dep. 81:7-22, 83:2-14. Accordingly, G&L's motion for summary judgment on the strict design defect survival claim must be denied.

    b. Strict Failure to Warn

    In a Maryland strict failure to warn case, a manufacturer must warn of a dangerous condition if an average user "might not reasonably anticipate and fully appreciate" the danger. *Mazda Motor of Am., Inc. v. Rogowski*, 105 Md. App. 318, 328, 659 A.2d 391, 396 (1995) (citation and internal quotation marks omitted). There is no duty to warn if the plaintiff "knows, should know, or reasonably may be expected to know of a particular danger." *Id.* (no duty to warn that seat belts cannot be expected to protect occupants no matter how severe the accident). Here, Desrosiers states that Mr. Desrosiers used the drift pin as a "quick way" to complete his task. Paper No. 155 at 19. Mr. Desrosiers, in light of his expertise, knew or should have known about the danger of using a drift pin instead of a draw key; he requested and received a replacement draw key before the accident. Greenawalt Dep. 45:10-13, 60:11-61:1; *see also* Kvalseth Dep. 289:19-290:1 (any operator would know of the entanglement hazard). Accordingly, G&L's motion for summary

judgment on the strict failure to warn survival claim must be granted.

E.  Negligent Products Liability[17]

Desrosiers's negligent products liability claims allege that the HBM was defectively designed and had no warning. Compl. ¶ 5.

1.  Wrongful Death Claims Under Wisconsin Law

Wisconsin law governs Desrosiers's wrongful death claims based on negligent products liability.

a.  Negligent Design Defect

Negligence liability focuses first on the defendant's duty of care to "refrain from any act which will cause foreseeable harm to others."  *Green*, 245 Wis. 2d at 811, 629 N.W.2d at 745. A jury may "consider that the manufacturer has a duty to foresee reasonable abuses of the product."  *Hansen*, 215 Wis. 2d at 667–68, 574 N.W.2d at 255 (whether a farmer who knowingly misused a machine was more negligent than the manufacturer "present[ed] questions of fact that a jury should resolve").

---

[17] On Desrosiers's negligence claims, G&L asserts defenses of (1) assumption of the risk; (2) contributory and/or comparative negligence; and (3) superseding and intervening cause.  *See* Paper No. 146 at 23–25, 36–40.  These defenses will be left to the jury; G&L concedes that "the accident was unwitnessed, so no one knows exactly what Mr. Desrosiers was doing at the time." Paper No. 146 at 2; *see, e.g.*, *Union Memorial Hosp. v. Dorsey*, 125 Md. App. 275, 282, 724 A.2d 1272, 1275 (1999) ("Ordinarily, the question of whether the plaintiff has been contributorily negligent is for the jury . . . ." (citation and internal quotation marks omitted)).

Desrosiers asserts that the defendants did not include emergency cut-off switches or guards on the HBM. *See, e.g.*, Paper No. 155 at 6-7. She states that even if Mr. Desrosiers improperly used the drift pin instead of the draw key, this "common practice" was "foreseeable misuse." Paper No. 155 at 32; *see also* Bergman Dep. 161:1-10 ("fair" to say that using a drift pin is a "foreseeable misuse").

A 1946 patent (the "Wade patent") for a design like the draw key stated that "the common practice has [previously] been to hold such tapered shank tools in place with tapered keys driven into place." Paper No. 155, Ex. 15 at 2; Orlowski Dep. 105:9-11 (drift pin is effectively a tapered key). G&L also patented a shield (the "Zettler patent") that Desrosiers argues would have protected the operator from the HBM's spindle. Paper No. 155 at 5, Ex. 16.[18]

G&L argues that the Wade patent does not conclusively refer to a drift pin, and that there is no evidence that guards or the Zettler patent were feasible for the HBM at issue. Paper No. 161 at 10-11, 18.

---

[18] Desrosiers also describes prior lawsuits against G&L in which operators became entangled on spindles, Paper No. 155 at 12-15, and argues that G&L had no accident records because its policy is to "destroy[ all litigation files] two years after the disposition of a case," Sitterly Dep. 70:8-10. G&L argues that its policy is "normal business practice." Paper No. 161 at 22 n.21.

A reasonable jury could conclude that G&L should have reasonably foreseen that an operator would use a drift pin instead of a draw key in the HBM.  Thus, G&L's motion for summary judgment on the negligent design defect wrongful death claim must be denied.

b. Negligent Failure to Warn

In Wisconsin, the sophisticated user defense shifts the duty to warn to the "party in the best position to know of the product's potential uses--thereby enabling that party to communicate safety information to the ultimate user."[19]  This defense may be used if it is "reasonable for [a defendant] to expect that [another party] would institute the necessary safety precautions."  *Id.* at 986, 669 N.W.2d at 745.

Gischel, Mr. Desrosier's employer, was in the best position to communicate safety information about the HBM's uses and did so.  *See, e.g.*, Greenawalt Dep. 43:18-20 (Gischel required employees to watch safety videos).  It was also reasonable to expect that Gischel would communicate safety warnings since it was an industrial machine shop.  Gischel Dep. 6:20-21, 7:12-15.  G&L thus had no duty to warn because that duty shifted to Gischel under the sophisticated user defense.  Accordingly,

---

[19] *Haase v. Badger Mining Corp.*, 266 Wis. 2d 970, 984-85, 669 N.W.2d 737, 743-44 (Wis. App. 2003) (transferring duty to warn from a corporate silica sand supplier to the silicosis victim's "knowledge[able]" employer).

G&L's motion for summary judgment on the negligent failure to warn wrongful death claim must be granted.

2.  Survival Claims Under Maryland Law

Maryland law governs Desrosiers's negligent products liability survival claims.

a.  Negligent Design Defect

Maryland considers foreseeable use in a negligent design defect claim.[20]  A reasonable jury could conclude that it was foreseeable for an operator to use a drift pin in the HBM.  *See, e.g.*, Paper No. 155, Ex. 15 at 2 (patent stating that drift pins were commonly used to hold tools in place); Bergman Dep. 161:1-10.  Thus, G&L's motion for summary judgment on the negligent design defect wrongful death claim must be denied.

b.  Negligent Failure to Warn

Although Maryland recognizes negligent failure to warn claims, there is no duty to warn if "the danger was sufficiently evident that [someone] in the plaintiff's position would have foreseen it."  *Mazda*, 105 Md. App. at 329, 659 A.2d at 329.  Here, the un-contradicted evidence is that "any" machine operator would have known of the entanglement hazard, and Mr. Desrosiers requested a replacement draw key.  Greenawalt Dep.

---

[20] *See Am. Laundry Mach. Indus. v. Horan*, 45 Md. App. 97, 104, 412 A.2d 407, 413 (1980) (examining whether using an institutional clothes dryer to dry hot air balloons was a foreseeable use).

45:10-13, 60:11-61:1; Kvalseth Dep. 289:19-290:1.  Accordingly,

G&L's motion for summary judgment on the negligent failure to

warn survival claim must be granted.

    F. Breach of Warranty

    Desrosiers alleges that the defendants breached the

warranty of merchantability that the HBM would be "safe . . .

for ordinary use."  Compl. ¶ 11.  In Maryland, a plaintiff must

sue for breach of contract within four years of the tender of

the goods forming the basis of the warranty.  Md. Code Ann.,

Com. Law § 2-725.[21]  It is undisputed that the HBM was originally

sold in 1953, and Desrosiers sued for breach of warranty in

2007.  *See* Paper No. 146 at 33; Paper No. 155 at 3.  Her claim

is barred by Maryland's statute of limitations.  Accordingly,

G&L's motion for summary judgment on the breach of warranty

claim must be granted.[22]

---

[21] *See Mills v. Int'l Harvester Co.*, 554 F. Supp. 611, 612 (D. Md. 1982) (in applying choice of law rules in a diversity case, the "action [is] always barred if barred by [the] statute of limitations of [the] forum state" (citation and internal quotation marks omitted)).

[22] The discovery rule does not save this claim.  Section 5-101 of Maryland's Courts and Judicial Proceedings Article does not control if "another provision of the Code provides a different period of time within which an action shall be commenced."  *See* Md. Code Ann., Com. Law § 2-725.

G. Punitive Damages

Desrosiers seeks punitive damages on her products liability claims. *See* Compl. ¶¶ 9, 23.[23] Punitive damages are "not recoverable in [Wisconsin] wrongful death actions." *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 315, 294 N.W.2d 437, 465 (Wis. 1980).

As to punitive damages based on survival claims,[24] Maryland requires Desrosiers to prove "by clear and convincing evidence" that G&L knew of a dangerous defect when the HBM left its possession, and acted in "bad faith [by] market[ing the HBM] in conscious or deliberate disregard of the threat to the safety of the consumer." *Owens-Ill., Inc. v. Zenobia*, 325 Md. 420, 462–63, 601 A.2d 633, 653–54 (1992) (emphasis omitted).

Desrosiers argues that G&L knew about the entanglement hazard from the "inception" of the HBM line, Sitterly Dep. 51:1-4, and "exploited [a] document destruction plan" of reports on previously injured operators, Paper No. 155 at 42. G&L asserts that even if the HBM was defective, Desrosiers cannot show that it had "actual knowledge of a product defect" and deliberately

---

[23] Desrosiers also seeks compensatory damages, but there is no dispute over whether those damages should go to the jury.

[24] Desrosiers did not analyze punitive damages under Maryland law. *See, e.g.*, Paper No. 155 at 39–44 (arguing that the Court "should apply Wisconsin law to [her] survival claims"). Because the Court must "draw all reasonable inferences in [Desrosiers's] favor," *Dennis*, 290 F.3d at 645, the Court considered Maryland law.

disregarded a foreseeable harm.  Paper No. 146 at 42.  G&L

defends its record retention policy as "normal."  Paper No. 161

at 22 n.21.

There are genuine issues of material fact about whether the

HBM was designed defectively.  Punitive damages are normally for

the jury to decide.  *Owens-Corning Fiberglas Corp. v. Garrett*,

343 Md. 500, 540, 682 A.2d 1143, 1163 (1996) (whether the

plaintiff's evidence satisfied the burden of proof on punitive

damages was "solely a jury question").  Accordingly, G&L's

motion for summary judgment on punitive damages must be granted

on the wrongful death claims and denied on the survival claims.

III. Conclusion

For the reasons stated above, G&L's motion for summary

judgment will be granted in part and denied in part, and the

motions for summary judgment of MAG Industrial and Maxcor will

be granted.

October 18, 2010                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge